## Case No. 6,612.

### HOLLINGSWORTH et al. v. The BETSEY.

[2 Pet. Adm. 330.] [1]

District Court, D. Pennsylvania. April 7, 1795.

TORTS IN ADMIRALTY—SEIZURE OF NEUTRAL VESSEL—DAMAGES.

The Betsey, belonging to the libellants, citizens of the United States, bound from St. Bartholomews to Amsterdam, with a neutral cargo on board, was taken by a French privateer, and brought into the port of Philadelphia. The district court ordered her to be restored and awarded damages to the libellants and the owners of the cargo.

Jehu Hollingsworth, the younger, and John Shallcross, of the city of Philadelphia, merchants, by their bill and libel, in all humble manner shew, that they the said Jehu and John are citizens of the United States of America, and real and true owners of a brigantine called the Betsey, commanded by William Clark, and in due form of law registered by the government of the United States. That the said brigantine being at the island of St. Bartholomews, in the West Indies, belonging to the king of Sweden, he the said William Clark did, on or about the seventh day of May last, enter into a charter-party with P. H. and Abraham Runnals, burghers of the said island of St. Bartholomews and subjects of the king of Sweden, and by the said charter-party the said William Clark did grant and to freight let unto the said P. H. and Abraham Runnals, the whole tonnage of the hold of the said brigantine, deck, half-deck and cabin, from the port of Gustavia in the said island, on a voyage to be made by the said Clark, with the said brig with the goods and merchandizes of the said P. H. and A. Runnals, to either of the ports of Amsterdam or Hamburgh, as should be assigned or concluded upon by the consignee. A. Runnals, on their entrance in the British channel; and if need was, to put into any one of the safe ports, harbours or bays on the coast of Great Britain, the danger of the seas excepted. That the said P. H. and A. Runnals did cause the said brigantine to be loaded with a cargo of sugar, coffee and other articles, the property of the said P. H. and A. Runnals, and the said William Clark did on the twenty-eighth day of May last, sail from the said island of St. Bartholomews, and proceeded on the voyage in the said charter-party mentioned, but on or about the fifteenth of June last, the said brigantine Betsey being in the prosecution of the said voyage, was forcibly, violently, tortiously and unlawfully, in the latitude of 36 deg. north, and longitude 45 deg. west from London, on the high seas and within the jurisdiction of this court, attacked and taken by a certain armed vessel of Marseilles, called the Sans Culottes, commanded by a certain Joseph Moulinary, and

[1] [Reported by Richard Peters, Jr., Esq.]

by the said Joseph Moulinary and the crew of the said Sans Culottes, was forcibly and against the will of the said William Clark and to the great damage of the said Hollingsworth and Shallcross, from the defeating the said voyage and rendering them unable to comply with the said charterparty, tortiously, violently and unlawfully brought into the port of Philadelphia on the third day of July last, where the said brigantine Betsey and the cargo so laden on board her as aforesaid, have been ever since and still are detained by the said Joseph Moulinary from the said Hollingsworth and Shallcross and the said William Clark, although repeatedly demanded.

To the end that the said brigantine Betsey, with her cargo, tackle, apparel and furniture may be restored to the said Hollingsworth and Shallcross—that they may be compensated for all damages, and that justice may be done in the premises as to your honour shall seem meet, may it please your honour to cause process to be issued for the seizing the said brigantine Betsey with her cargo, tackle, apparel and furniture—for the seizing the said vessel called the Sans Culottes, and the apprehension of the said Joseph Moulinary, so that he be and appear at the next court to answer to your libellants.

Wm. Lewis, for Libellants.

The plea of Joseph Moulinary, a citizen of the French republic, on behalf of himself and all concerned in the capture of the brigantine called the Betsey and her cargo, to the libel and petition exhibited to this honourable court by Jehu Hollingsworth and John Shallcross, the said Joseph Moulinary by protestation not confessing or acknowledging any of the matters and things in the libellants' said petition and libel contained, to be true, in such manner and form as the same are therein and thereby alleged for plea to the said libel and petition, says that he was at the time of his attacking in an hostile manner and making prize of the said brigantine, her cargo and people, and now is duly commissioned by the French republic as captain on board the armed vessel Sans Culottes, fitted out by and belonging to the citizens of the said republic, to attack all the enemies of the said republic, wherever he might find them, and take them prisoners with their ships and property, which commission he is ready to shew unto your honour—that he the said Moulinary, with his officers, seamen and mariners on board the said armed vessel Sans Culottes, took as prize the said brigantine Betsey, belonging to some subject or subjects of the United Netherlands, then in open hostility and actual war with the French republic and her citizens, and brought the said brigantine and property, as prize into the port of Philadelphia—he therefore prays that he may be hence dismissed, and the said brigantine Betsey and cargo, and the said armed vessel

called the Sans Culottes discharged from arrest.

Joseph Moulinary.

P. S. Du Ponceau,
Advocate for the Respondents.

The replication of Jehu Hollingsworth, and John Shallcross, to the plea of Joseph Moulinary:

These repliants asserting that all the matters and things in the petition and libel of the said repliants are true, do reply and aver, that the matters and things in the said plea by the said Joseph Moulinary pleaded, are not true; and particularly that the said brigantine Betsey did not at any time whatever belong to any subject or subjects of the United Netherlands, or of any other foreign power, state or kingdom, all which they are ready to maintain and prove when, &c.

Jehu Hollingsworth, Jun.
John Shallcross.
Wm. Lewis, for Libellants.

PETERS, District Judge. Being satisfied by the papers produced to the court, that it appears, prima facie, that the brig Betsey is American property, and the cargo the property of subjects of the king of Sweden; and that the capture, so far as those papers evidence, is not a taking by one enemy from another; and the ship and goods being expensive and perishable, I pronounce the following interlocutory sentence and decree. It is, however, to be understood, that I do not hereby preclude further investigation and inquiry into any matter or thing, herein taken, quoad hoc, for granted; but the whole subject, as to fact, law and jurisdiction, is open for discussion, and for the final sentence and decree of the court.

It is ordered and decreed by the court, that the brigantine Betsey in the libel mentioned, her tackle, apparel and furniture, and the goods, wares, and merchandize wherewith she was loaded at the time of her capture, be delivered to the libellants in this cause, on their entering into stipulation to abide the final order and decree of this, or the court of appeals in this cause, and to make restitution of the vessel and cargo, or the value thereof, in case the libel be finally dismissed. And now, to wit, this thirteenth day of June, one thousand seven hundred and nine-four, the libellants exhibit a notice from the respondents to shew to the court certain books, papers, letters and documents therein mentioned, which notice is filed, among the exhibits in this cause; and the libellants produce and shew to the court the books, letters, papers and documents so required: Whereupon, the counsel for the respondents waive all further controversy respecting the property of the said brig, and the cargo on board her at the time of her capture. It is also agreed that the cargo is protected from capture by the treaty between the United States and the French

nation: Whereupon, and on consideration of the evidence produced in this cause, I do finally adjudge, order and decree, that the said brigantine Betsey, her tackle, apparel and furniture in the libel mentioned, and the goods, wares and merchandize on board her at the time of her capture, be restored to the libellants with costs agreeably to the prayer of the libel. But at the request of the counsel for the respondents, the point of damages is reserved for argument, and the further and final decree of this court; and the respondents have leave to answer further on that point.

And now, viz. June 17th, 1794, the respondents in this cause, for further answer to so much of the libel of the said Jehu Hollingsworth and John Shallcross, as prays for damages to be allowed and assessed to them, against the said respondent for the seizure, detention, and bringing in as prizes of the said brig Betsey and her cargo, under protestation that this honourable court is not competent to give damages in a case of this nature, justify the taking and bringing in as prize of the said brig Betsey and her cargo, by alleging, that it is lawful by the laws of war, for an armed vessel of a belligerent nation duly commissioned, to seize and take upon the high seas, and bring into port for legal adjudication a vessel sailing under a neutral flag, on suspicion that such vessel does not bona fide belong to neutral subjects or citizens, but that she is the masked property of the enemies of the country to which the armed vessel belongs. That at the time of making the said capture, the respondents had probable ground to suspect that the said brig Betsey was the masked property of the enemies of the French republic, and brought her into the port of Philadelphia for legal adjudication. On this ground, protesting as aforesaid, they pray that the libel of the said Hollingsworth and Shallcross, in as much as it respects damages, be hence dismissed with costs.

P. S. Du Ponceau,
Advocate for Respondents.

The replication of the libellants to the plea of the respondents, dated 17th June, 1794:

The libellants expressly denying that at the time of making the capture in the libel and plea mentioned, the respondents had probable ground to suspect that the said brig Betsey was the masked property of the enemies of the French republic, and saving to themselves all benefit of exception to the said plea, reply and say that nothing in the said plea contained ought to preclude them, the said libellants, from the recovery of damages against the said respondents agreeably to the prayer of their libel.

Wm. Lewis, for Libellants.

PETERS, District Judge. The brigantine Betsey, the property of the libellants, who are citizens of the United States, was, in pursuance of their orders, let on freight by the captain of the said brigantine, about the seventh of May, 1793, at the island of St. Bartholomews, to P. H. and A. Runnals, subjects of the king of Sweden and burghers of that island. The vessel being at St. Eustatius when chartered, a few hogsheads of sugar were purchased there and taken on board, as part of her cargo, agreeably to the charter-party, and the said brig sailed therewith from St. Eustatius to St. Bartholomews, where she completed her cargo, consisting of sugar, coffee and a few hides, which belonged to the freighters, P. H. and A. Runnals. The brig having thus completed her cargo, set sail from St. Bartholomews bound to Hamburg, agreeably to charter-party, on the 28th of the same month of May; on the 15th of the following June the vessel and cargo, when proceeding on her voyage aforesaid, were captured by the French privateer Sans Culottes of Marseilles, and on the 22d of July in the same year, brought into the port of Philadelphia. This privateer was under Spanish colours, and is a xebeck, whose fashion and appearance were peculiarly alarming. The circumstances happening at the time of capture will appear in the exhibits filed in this cause. On the 13th of June, 1794, after a minute investigation and severe scrutiny, in which even the books and private correspondence of the libellants had been repeatedly submitted to the council and other persons on the part of the respondents, the said council abandoned all further controversy respecting the property of the brigantine, and agreed that the cargo was protected from capture by the treaty between the United States and France.—Whereupon and on consideration of the evidence produced, a decree for restitution was passed, but the point of damages was reserved. On the hearing of this point, it was contended by the advocates for the respondents, that the circumstances occurring at the time of capture justified the bringing into port, and amounted to such probable cause as will, agreeably to the general laws of nations and the ordinances and regulations of France particularly, repel any claim to damages for the capture and detention.

I have maturely weighed the evidence on which the arguments of the advocates for the respondents were founded, and taken into consideration the authorities by them produced, yet I am nevertheless of opinion, that although the circumstances appearing to the captors at the time of capture might probably excuse an examination on the spot, yet they did not amount to a justification of their conduct in compelling the vessel to deviate from her lawful voyage in a manner so ruinously injurious to the owners of both vessel and cargo. Whatever may be the opinions of individual nations, having arms in their hands and of course the power to enforce such opinions, it is at least questionable whether neu-

trals are bound to submit to searches, however prudent it may be that they should, sometimes, yield in this particular. There are very respectable authorities which assert, that "a neutral ship is not obliged to stop to be searched;"[2] although there are others, holding the contrary doctrine.[3]

No one nation has, however, the right to dictate in this or any other particular to the rest, by its own ordinances, what shall be law of nations, the principles whereof must be founded in justice and established by common usage and consent. If a belligerent party captures and detains neutral property, he does it at his peril. Should the capture and detention, on investigation turn out to be unwarranted by the general law of nations, or forbid by particular treaty, he is bound by

[2] See the case of Saloucci v. Johnson, Parker, 364, 365, for the opinions of the English common law judges, Willes, Ashurst and Buller (Lord Mansfield absent) all agreeing on this point. Also, that a neutral firing on a belligerent appearing under false colours is not a breach of neutrality.

[3] It seems to be a settled principle now, that neutrals are bound to submit to searches, and the modes of conducting such searches are the only subjects of dispute. Our nation has acknowledged this right by entering into arrangements in several treaties and conventions, as to the manner of effecting it. In the above case, testimony was taken (and had due attention paid to it) to shew that there was ground for apprehension on the part of the American master and crew, that the privateer was a cruizer belonging to one of the Barbary powers. The privateer was a xebec, and the colours under which she first appeared were false and suspicious. The fashion and appearance of the vessel created alarm in the minds of the captain, supercargo and crew, and induced some preparation for flight or concealment and destruction of papers, which however were not executed. Minute investigation was made as to the property which was suspected to belong to Dutch merchants, France and Holland being then at war; and the books and clerks of the owners were submitted for examination. The right of search and subjects connected with it are discussed in 2 Azuni, pt. 2, c. 3, and notes, as well as in other writers. This and some other cases determined here, shew that I have always considered it justifiable to examine into the claims of our own citizens, and to restore property indubitably neutral, when within our jurisdiction. In the cases of Findlay v. The William [Case No. 4,790], and Moxon v. The Fanny [Id. 9,895], I would not take cognizance of captures made by one enemy from another, under my ideas of the impropriety of the examination by judicial authority; afterwards I yielded to legislative injunctions and decisions upon this point. Modern authorities support the principle recognized by the act of congress, giving jurisdiction to the courts in cases of captures within our territorial limits; but no neutral sovereign or state has the right to examine into questions concerning prizes under other circumstances, though brought within its ports or jurisdictional limits, when such questions affect only belligerent nations. "The prerogative which exempts a ship of war or privateer from the jurisdiction of the sovereign into whose port the prize is carried, ought to have effect only in the case where the prize may belong to an enemy, or the subject of an enemy, and not when the sovereign of the port into which it is carried, or some other neutral power, is interested in the prize; or where it belongs wholly to a neutral, which is a different case."—2 Azuni, M. L. of Europe.

every rule of law and reason to make ample compensation. It appears clear that the capture of the Betsey and cargo was in every view of it unlawful, and being of opinion, that the circumstances relied on for probable cause, do not justify the detention and bringing into port—

I do decree, adjudge and order, that the respondents pay to the libellants the damages sustained by them by the unlawful capture and detention of the said brigantine Betsey and her cargo, with costs. And to the end that the said damages may be truly and justly ascertained, I do hereby order and direct the clerk of this court to associate with him three intelligent and disinterested merchants of this district, who, or any two of them with the clerk, shall examine into all circumstances relative to the vessel and cargo and the losses and damages consequent thereon, and ascertain the amount thereof, according to justice and good conscience, and the clerk is hereby directed to make report of the doings herein at the next court day.

Conformable to a decree pronounced by RICHARD PETERS, Esq., judge of the said court, in the above cause, on the eighteenth day of March last past, the clerk reports:

That having associated with him James Yard, Robert Ralston, and Daniel Smith, of the city of Philadelphia, merchants, the said clerk and his associates have examined into all circumstances relative to the capture of the said brigantine Betsey and her cargo, and the losses and damages consequent thereon, and are of opinion, that according to justice and good conscience, the said libellants Jehu Hollingsworth the younger, and John Shallcross, owners of the said brigantine, by reason of the capture and detention thereof, have sustained damage to the amount of four thousand two hundred and seventy-seven dollars and forty-nine cents, and that P. H. Runnalls, and A. Runnalls, the owners of the cargo, and charterers of the said brigantine, by reason of the capture and detention aforesaid, have sustained damages to the amount of two thousand four hundred and eighty-five dollars, and twenty-nine cents.

James Yard.
Robert Ralston.
Daniel Smith.

Samuel Caldwell,
Clerk of the District Court.

PETERS, District Judge. And now, to wit, this seventh day of April, in the nineteenth year of the independence of the United States, the clerk having agreeably to a former decree, reported—

"That having associated with him James Yard, Robert Ralston, and Daniel Smith, of the city of Philadelphia, merchants, the said clerk and his associates having examined into all circumstances relative to the capture of the said brigantine Betsey and her cargo, and the losses and damages consequent there-

on, and are of opinion, that according to justice and good conscience, the said libellants Jehu Hollingsworth the younger, and John Shallcross, owners of the said brigantine, by reason of the capture and detention thereof, have sustained damage to the amount of four thousand two hundred and seventy-seven dollars and forty-nine cents: and that P. H. Runnalls, and A. Runnalls, the owners of the cargo, and charterers of the said brigantine, by reason of the capture and detention aforesaid, have sustained damages to the amount of two thousand four hundred and eighty-five dollars, and twenty-nine cents."

And the said report being read, and duly considered by the court, it is adjudged, ordered and decreed, that the respondent Joseph Moulinary, pay the libellants Jehu Hollingsworth the younger, and John Shallcross, the sum of four thousand two hundred and seventy-seven dollars and forty-nine cents, for their damages by them sustained by reason of the capture and detention of the said brigantine Betsey. And that the said respondent also pay to the said libellants, attornies in fact to P. H. and A. Runnalls, the further sum of two thousand four hundred and eighty-five dollars and twenty-nine cents, for their damages by them sustained by reason of the capture and detention aforesaid.

Ordered—That this decree be absolute, unless cause is shewn in four days.